The cause came on before chancellor James, who after hearing the evidence, and the argument of counsel, pronounced the following decree :
This case originated at law, where Ann James, now Ann Gary, brought an action to recover the property of her father, John James, deceased. It was tried before judge Grimkc, in the court of common pleas, for New-berry district, and the judge charged the jury in favor of the defendants. Before the jury delivered in their verdict, the plaintiff’s counsel suffered a non suit, and brought up the caso to the Constitutional Court at Columbia, upon the ground that his honor’s charge was contrary to law. After argument the Constitutional Court confirmed the decision of Judge Grimko; but recommended the plaintiff’s counsel to carry her cause into equity.
*192 Asm James afterwards intermarried with William Gary; atsti they filed their bill in chancery. The sub.stance of the case, as made out there, was as follows:
John James, of Newberry district, the testator and fat*!C1' Ann the complainant, having had some differ-enees with his wife Elizabeth, the mother of Ann, turned them both out of his house, when his daughter Ann was about three months old. The mother afterwards travel-led to Charleston, where she obtained a place in the orphan house, and placed her daughter under the protection of that excellent institution. Beholden to charity alone, the daughter Ann continued there, and was maintained and educated, till she was sixteen years of age.
About eighteen months after John James drove away his wife and child, he took home as a wife Nancy Tucker, one of the defendants, and afterwards lived with her as his wife, taking* no further care of his real wife Elizabeth and daughter Ann. When Ann had arrived at the age of sixteen, her mother left the orphan house with her, intending to remove to the western country ; and as they happened to pass through Newberry district, near where the father still lived, her daughter asked permission of her to go and sec her father; to which her mother consented. In consequence of her mother’s permission, Ann visited her father and remained with him a few days, and again returned to her mother. During this short visit, he was so much pleased with her, that upon her leaving him lie requested a certain John Hatton, to go to her and persuade her to return to him ; and he wrote her a letter by him, dated 2d: March 1807", in which, addressing her as his dear child, he invited her to return; promised “to regard her as the object of his love and affection $ to treat her with care and attention ; and declared if she would come back to him, that she should bo the heir of his property.” As a further inducement for' her to return, ho authorized John Hatton to tell her, if she ever wished to visit her mother, while she was with 3dm, he would furnish her with a horse and saddle for that purpose. When the letter was presented by John Hatton, and read by the *193 mother and daughter, the mother joined with Hatton in persuading Ann to return to her father. Ann returned, though reluctantly, and lived with her father sometime, in compliance witii her mother’s persuasiou and advice; but it appeared that A. Tucker led her an unpleasant life.
Three respectable witnesses, near neighbors of John James, deposed, that Ann demeaned-herself as a dutiful child. Indeed, they all agreed, that she behaved uncommonly well to her father; and one of them, Mrs. Crenshaw, who had been very intimate with her, and often at her father’s, said she never knew her to go any where without his permission.
Soon after she returned home, John James introduced her to Mr. Edward Finch, a respectable neighbor, and telling him she was a very fine girl, asked his leave to let her visit his daughter, (now Mrs. Crenshaw) to which Mr. Finch consented.
Spmetime after Ann had been with her father, her mother came to Mr. Finch’s in the evening, and sent for her ; and early the nest morning she went to see her — 1 staid till about one o’clock;in the afternoon, and then returned home with Miss Finch; — but the moment she arrived, her father ordered her out of his house, and drove her away. Upon being asked his reason by Mr, Finch, for doing so, he did not complain of any disobedience on her part, hut said she loved her mother better than him; and that she and his little woman could not agree.
Not long after John James was taken extremely ill, and Ann Taylor sent two messages to Charles Brown, (a witness for the complainant,) to go and see the testator execute his will. Afcr the second message, Charlei-T Brown was induced to go; and found John James in extreme misery ; the witness saw him sign his will — and afterwards he said to Ann Tucker, “ Now 1 hope you are satisfied.”
The testator died leaving the will in full force, and by it he left the whole of his property, during life, to Ann Tucker, and the remainder to two of Ihc other defen-• *194 (¡anís ; thereby depriving Ann, his only child, of all be-neflt under it.
&
The letter delivered by John Hatton was prior in ^ie W^’ r^lc Iu'ayc1' in complainant’s bill was to set up this letter as a contract on the part of the fa* ther, so as to defeat the bequests under the will.
The defendants demurred to the equity of the bill, and the demurrer was argued before judge Thompson, at Laurens, in February last, and he over-ruled it. The defendants brought up the demurrer to the court of appeals in equity, in April last, and three of the judges, Desaussure, Gaillard and James, in the absence of judge Thompson, affirmed his decision, and ordered the defendants to answer.
The defendants have answered, and relied upon the will. They also stated, that John James, the testator, Who was a foreigner, had a lawful wife in England at the time he married Elizabeth the mother of Ann; and after he turned Elizabeth away, his wife in England died, and he married Ann Tucker, who was then his lawful wife. The answer besides alleged, that Ann had been disobedient to her father after she returned to him. But these allegations were not supported by proofs.
The cause being thus ready for hearing upon the merits, came on for trial.
Mr. Farrow and Mr. ■ Caldwell, solicitors for the complainants, argued, that the father having abandoned his daughter, when but three months old, and leaving her, for aught he knew, to perish, was not of right entitled to her services, when she arrived at the age of sixteen: that under the particular circumstances of this 'case, she was independent of him, and capable of contracting with him for her services $ and that the letter was a "s alid contract to that effect.
Mr. Crenshaw, solicitor for defendants, in order to prove that Ann Tucker was the lawful wife of John James, called a witness who was about to repeat what the testator, John James, had said to that effect, after he had driven his wife Elizabeth away. But the judge refused to hear such testimony, stating, that colrabitation *195 anil general reputation which had been given in evidence, were sufficient to establisii the marriage with Elizabeth' in the present case, and if they wished to controvert such reputation, they • must do it by higher testimony than the declarations of John James not upon oath. The defendant’s solicitor then called a witness to prove the disobedience alleged against Ann. This witness deposed that he lived at John James’ after the return of his daughter Nancy. He said that she did not misbehave herself, nor gad about in the settlement; but that on a certain morning, he believed the one on which she visited her mother, she was dressed and ready to go, and her father said she must not go 5 that notwithstanding she went; and yet that the father did not appear to be in the least displeased at her going.
.
Mr. Crenshaw relied upon the general ground, that the father was of right entitled to the services of the daughter : that she as his child and a minor, was incapable of contracting with him; and lie urged the instance of disobedience in her, as stated by ¡.the witness.
On the following day, the Judge gave his opinion in substance as follows :
In this case four grounds offer themselves for the*1 consideration of the court: First, — -Whether under the circumstances stated, the father was of right entitled to the services of the daughter ? Second, — Whether she was capable of contracting with him ? Third, — .Whether the letter in question contains a valid contract ? and Fourth. — Supposing the contract valid, whether Ann has not forfeited her right to the benefit of it by disobe- . dience ?
The first ground would lead into a wide field of discussion, but our time is short, and the press of business appears to be great. No authority in point has been stated, and perhaps the like of this case cannot be found. The legal duties of a parent are to maintain, protect anil educate the child ; — those of the child are to obey and he subject to the parent j moralists also add, that of making provision for the child. The law of nature teaches, that 1he father is neither to leave his own offspring to perish* *196 nor by abandoning it, is lie to cast the burden of it upon others. And the revealed law declares “ that if any provide not for his own, especially those of his own household, he hath denied the faith, and is worse than infidel.” In particular, the duty of maintenance on the part of the parent, and of subjection on tho part of the child, appear to he reciprocal, and mutually dependant upon each other. Otherwise, without maintenance how ft the child to grow up from helpless Infancy, to that more mature state of body and mind, in which he may have ability and understanding to subject himself to the parent? The answer is obvious; and shews that the duty of maintenance is antecedent to subjection ; and that the latter is derived from and exists not independent of the former. Then as to obligation, except the-; due performance of the parental duties, the child is under none to the father, but in the single instance of giving him being: Yet it would be better to say, that a brute conferred a favor on his young by begetting him, than to urge that a father by the like act, bestows one upon his offspring, when he abandons him, and refuses to maintain and educate him. Then in such a case as this, there being no obligation conferred, there can be no rights to be claimed. The rule that a child owes its parent subjection, is a general one, and I wish not to impair it; but if there were to be no exceptions to general rules, it would be much better that such were not adopted. Besides, in this case, the, father appears to be conscious he had forfeited the right to the services of the daughter; otherwise when she was with him, why did he suffer her to return to the mother ? Or w by, when lie employed one to go toiler, did lie not tell him, to command, rather than persuade her to return ? For the reasons adduced, and sitting here as I do, to mitigate the rigor of the common law, I am of opinion that the father in this particular case, was not of right enii-iled to tiie services of his daughter.
The second question is, whether the daughter wan capable, of contráctilig with her father ? First, as his child, and second as a, minor. The decision of tho former general question, has embraced tho first part of tho *197 latter one; for if the father was not of light entitled to the services of bis daughter as a parent, she, although his child, was as capable of contracting for them as any other indifferent person. But the other objection is that she was a minor. This has no weight, for it has been long held that infancy is a personal privilege, of which none but the infant himself can take advantage, and therefore he may enforce a contract made with an adult.
The third question for consideration, is, whether the letter in question contains a valid contract ? blow it appears to me to have all the requisites of a contract. There is -a person able and one capable of contracting. There is assent on both sides, and words expressive of such assent. And there is a good consideration. On the part of the father, the advantages to be gained was, in his old age to regain the services of his daughter; which he was conscious he had forfeited : and what was, or ought to have been of more importance, to him, to ful-fil the moral obligation by which ho was hound, to make provision for his child. On the part of the daughter, the disadvantages were to quit a tender mother, and to subject herself, not to the, reasonable will alone, but also to the caprices of a father, governed by a woman, who had usurped her mother’s place, and who, it might he expected, was naturally her enemy. Surely such sacrifices should have entitled her as an only child, to look forward to the remuneration offered her by the letter, of being *• the heir of her father’s property.”
Wo come now to the last question, — lias not the daughter forfeited all right to the benefit of the contract by disobedience ? This has been much insisted upon, and therefore requires more attention. If she has been guilty of disobedience, she cannot be favored in this court. The father had promised his daughter that she should be. at liberty to visit her mother, and when she came home to him, had particularly pointed out to her the house where she was to visit. Now', of all others, the mother had come, to that, very house, and sent for her daughter. How then was she to ad i To her father she owed ohodinjsca $ to her mother site *198 did not, according to her late engagement, if contrary to his will; but still to her as that parent who had maintained and educated her, and in poverty and disgrace had never forsaken her, she owed affection, love, and gratitude. Was she then to forsake that mother ? I apprehend not; I rather think that the father was bound by his promise, and that his commands were unreasonable. But I am not bound to decide upon this point alone. - The question presents itself in another view.
Three respectable witnesses, who had a good opportunity of knowing, state, tiiat Ann ivas an uncommonly dutiful child. And one of them, who was often with the-father and daughter says, she never knew her to go anywhere without his permission. Also, the witness against her states the same thing generally; but still, he says, that on the morning shewas goingto visit her mother, her lather ordered her not to go, and she disobeyed him; and yet he says, the father ivas not in the least displeased, which is an unaccountable circumstance. The father never complained of her disobedience; three -Witnesses depose that she was uncommonly obedient; and-yet all this is to be overturned by the testimony of a single witness, swearing to a single fact, which is inconsistent with the other parts of Ills evidence. I cannot give his testimony the effect contended for. Indeed in my mind it has but little weight. Therefore, the charge of disobedience is not proved.
To the decision on the first ground there is an objection, that if application liad been made for it, this court would have compelled the father to maintain the child $ and therefore he being still liable for maintenance, she ivas still liable to perform services. This objection* is founded upon a mere possibility, that the child might* stand in need of assistance, which did not happen in this case ; and every case should be decided on its own particular circumstances. But supposing that the daughter when arrived at the age of sixteen, had wanted support from the father, and this court had ordered‘him to provide for her; still the maintenance afforded her must have been precedent to services on her part, or in other words, *199 be would have had no right to the latter, until he had entered upon the performance of the former. But again, ■with the charge of maintenance' the father would ateo have been entitled to the care ofthe person of his daughter. Then, after the improper connection he had formed, can it be for a moment supposed, that this court would have placed her under the direction and control of Ann Tucker ? I hope not. For myself I can declare, that I would not have delivered the lamb into the custody of the wolf.
Upon the whole of the reasons above stated, and under the particular circumstances of this case, I am of opinion that the contract entered into by the father with the daughter, is binding upon his estate, and claims precedence of the will; but though the will is attended by some suspicious circumstances, Í shall not meddle with it further. /
Let the executors account with the commissioner for the rents and profits of the estate, and after payment of .the debts, give up the remainder of the property to be settled on the complainant and wife, &c.
From the above decision there was no appeal.
Farrow for complainants. — A.- Crenshaw for defend anís.